Okay, whenever you're ready. Good morning, and may it please the court. This is a case where the district court abused its discretion, misread the record, and misapplied the law in order to summarily adjudicate valid claims against an automobile manufacturer. First, the district court erred in excluding appellant's expert reports by materially misreading those reports, including, most glaringly, in finding that appellant's damages expert only offered testimony with regard to one of the two defects asserted, when, in fact, Mr. Boyles offered evidence regarding both of the defects at issue. So, counsel, on that point, let's say, hypothetically, we were to agree with you on the damages report, but that the district court misread the damages report, but that the district court didn't abuse its discretion in rejecting Mr. Stableford's testimony as to the other defect. Yes. What are you left with? Are you left with a court of transmission fluid? I mean, what exactly would you be left with if that were, hypothetically, our ruling? I think that's right, Your Honor. I think if the court affirmed the exclusion of both the supplemental Stapleford report and the second of the two defects under the Stapleford report, we would be left with the claim purely as to the first defect, which would be the over-aeration of the transmission fluid. And you would go forward with a claim where what was, as far as I can tell, as in Mr. Boyle's report going to that point, the amount of the fluid and the time it took to add the fluid. Is there anything else? That's my understanding, and it would still be a valuable claim on a class-wide basis. So you would see class certification on that claim. Second, the district court erred in finding that without the Boyle's report, appellant had no evidence of damages. In fact, the record is replete with instances where a plaintiff testified as to how he was damaged by both defects. And under the law, a single person's testimony, the plaintiff's testimony, of how he suffered damages as approximate cause of the defect is sufficient. Would his damages on the defect that's left be the liquid and the time it takes, or his damages would be something different, like the inconvenience of what happened to him on the highway? So we would be looking to certify the class under Nguyen. Under Nguyen, it would be a benefit of the bargain damages model calculated based on an approximate cost of repairs. So even though he, perhaps on a personal claim, may have suffered damages above and beyond that, on a class-wide basis, when we see class certification, it would be those damages that were previously mentioned. Third, the district court would never have even reached the above erroneous analysis if it had never improperly excluded the supplemental expert reports in the first instance. There, Federal Rule 26E mandates that appellant properly supplement his expert reports when new evidence is discovered. And here, evidence that had been withheld until after the close of expert discovery, most importantly the deposition of appellee's PMT witness indicated that Stapleford had, while he properly diagnosed the problem with both defects, his proposed remedy as to the second defect was improper. I guess I'll have to push back on that a bit. I mean, I think we've all carefully read the first report from the liability expert, and it just seems clear to me that he got it wrong. He got the class plaintiff's car wrong, and he's very clear that, at least to me, that the fix for that problem was what the manufacturer had already done and that he didn't realize that. And I think that's more than a plausible reading of the expert's report. And if that's true, if I'm right on that, and feel free to push back on that, but if I'm right on that, how could the district court have abused his discretion in saying, no, I'm not going to let you supplement it. It's just the expert didn't do the work he was supposed to. He was already been deposed, and he just had this crucial thing 100% wrong. So I'd like to focus in on part of what you said, which was that the fix that he proposed was wrong. And I think we wholly acknowledge that the fix was not sufficient, that the vehicle, the transmission was still not being sufficiently cooled, even with the fix that he proposed. And it was because he misanalyzed what the fix should be. Well, but he misanalyzed, I think he misanalyzed what the problem is. If you look at the second report, I'm looking at ER 508, I think paragraph 24 of his report, where he talks about the change in the OEM part specification is evidence of FCA having knowledge of the defective design. Having knowledge of the defective design, and the fix he talked about was the fix they had already put in, and the one that he said in his supplemental report isn't actually a fix at all. Do I have that wrong? I think you have it correct, but I still think there's a crucial distinction there between the fix and the diagnosis. And so I think here where our expert diagnosed the problem correctly, that there was an overheating problem with the vehicle, with the JETCO transmission, remained consistent from both reports. I guess my problem with your argument, in terms of why the district court abused its discretion, just seems as though, even though maybe we don't have a published circuit court decision that set out the standard for when you're entitled to ex parte relief, I think it's fair to say that you need to show that you're not at fault for coming in late, which you did. And it just seems like you were completely at fault, in the worst kind of way, right? Number one, you should have had your expert look at the actual car of the lone named plaintiff in the case. My goodness, why was he looking at somebody else's car? And then number two, this 30B6 testimony. You had that, I think a day, you had that in hand a day after the summary judgment motion was filed, right? You had, what, six weeks to file your opposition. You ended up filing your opposition without asking Lee to supplement the expert reports. And then, basically, by the time you came in, the district court would have had to basically reopen expert discovery to allow a new, a fresh round of depositions and the like, and then reopen summary judgment briefing. And the court just said, no, I'm not going to do that because this is all your fault. So help me understand why you're in a position here now not to complain about that. I think there are a few things to address with that. And the first is actually a good reason why plaintiff's attorneys, in general, don't have their experts analyze the expected class plaintiff's car in these sorts of cases. So there is extensive investigation and sort of pre-filing discovery that goes on. But plaintiff's attorneys aren't sure whether the plaintiff that they originally choose to file the case or the person they think they're going to file the case with is going to be the plaintiff. And so that's why, when they file, right, when the original investigation happens. Summary judge, if you're trying to get your expert to prepare a report about what the class-wide defect is, what is the justification when, because the plaintiff still had the car, right? Yeah. It's not like the car was gone. Somehow the car is still, I get it. But you had the car in your possession, and I don't know where your expert was, but you went and found some other car to look at. That just doesn't make any sense to me. Well, and so then this court found in White v. Ford Motor Company that the expert isn't required to analyze an exemplary vehicle or the plaintiff's vehicle at all. Well, you should not be required to, but that doesn't mean it's not a good idea to. I mean, if all the cars are exactly the same, then maybe you're not required to. That's fine. But here they're not all, apparently, not all the same. Yeah, I agree with your observation, Your Honor. Forget about the, you're not having the expert look at the car. Just the timing. Help me with the timing. Yeah. You have in hand this supposedly devastating 30 v. 6 testimony, which we don't seem to have, or maybe you can point me where it is. But as soon as your expert is confronted with it, my report is entirely wrong. So why did it take you so long to make that realization yourself? So we did turn around the supplemental expert report within seven weeks of the 30 v. 6 deposition, or the P.A. deposition. And so given the amount of time it takes to transcribe a deposition and go through the errata process and so on. You said the testimony, weren't you? I mean, I personally wasn't. It was a deferred attorney on the case, but our firm was there. Yes, our team was there. So you've heard it in real time. Yeah. And didn't you immediately walk out of there thinking, boy, we have a problem because our entire expert report is focused on a different car? So I didn't make any personal observations. I wasn't there. But historically, at least compared to other cases, turning around a supplemental report within seven weeks is quick. Right? So the Ninth Circuit has held that waiting a year is long time. It's only done when summary judgment is so far along. I mean, that may be true when you're still way back in expert discovery before the summary judgment deadline, but this case is like racing along. So the seven weeks is long in this case. And so we did do the best we could to moderate any damage that would have been caused to opposing counsel's case. So, for example, we offered immediately that our witness would sit for a second deposition after his testimony came out. And we did move. I mean, it took seven weeks, but we did move within seven weeks for relief. You know, counsel, I have sympathy for your position here. Everybody who has done trials has had bad things happen. But given where this case was, it's just hard for me to see how we as an appellate court could find the case that had gone. What case would you point us to that says, in an analogous situation to this one, the district court abused its discretion? So I don't think I have one where it said that they abused their discretion by denying a supplement like this. But there are cases where supplements were allowed within short time periods like this. Let me look really quick. I would refer you, yeah, to the briefing. And I guess I reserve the remainder of my time unless there are other questions. That's a good idea. All right. Thank you. Good morning, Your Honors. My name is Stephen Dunlap. I'm here on behalf of FCUS this morning. From FCUS's standpoint, this is a pretty simple appeal. Was the district court rising? Yes. Can you all stop whispering so we can listen? Maybe if you can, I don't know, go away from me. It's distracting. So if you can move over. You're welcome to confer, but not when we can't hear your opponent. Thank you, Your Honors. Very simply, did this district court commit error in granting summary judgment in favor of FCUS? And one of the main issues inside of that that Plaintiff has raised here on appeal is whether or not Plaintiff should have been allowed to supplement what they call supplement their expert report. And I just want to do a quick background on the case to kind of put us in when this all happened. So this was a class action that was filed based on an alleged defect in a vehicle transmission. After a period of discovering, FCUS moved for summary judgment, raising several grounds, including that Plaintiff had no evidence of a defect, causation, or damages. And then in trying to stave off summary judgment, Plaintiff proffered an expert who opined that vehicles equipped with an external cooler. Now in proffering these opinions, the expert did not look at Plaintiff's vehicle. The expert did not. I think we all know all of this. So I'd like to ask about why the Boyles report doesn't describe a liquid defect, why there isn't a bit of the damages still left here. I think that's really hard for you, so I'd like to have you respond if you can. I think you have to read it in context. I think when you read what Boyles does. So Boyles takes what Stapleford said is the fix for this overheating defect, and it's a list of repairs. So the liquid defect is supposedly there's too much coolant in the system. If you read what Stapleford says is the fix, it's drain the coolant and then refill the coolant. It's not check the coolant, see if there's too much, and then adjust the level. We all agree that the district court only struck part of the liability expert's report, right? Yes. And I'm reading an ER 14 in the district court's order. Mr. Boyle's formula is entirely based on Mr. Stapleford's testimony about the auxiliary cooler defect or cooling defect. The report does not include expert testimony related to damages incurred by the repair of the fluid level defect. Basically the district court is saying he only addressed one, but Boyle's report talks about specifically two defects. And at ER 533, so isn't that finding by the district court just clearly wrong when he's saying everything in Boyle has to do with the auxiliary cooler defect and not the fluid level defect? I think they can be reconciled because, yes, no doubt, Boyle's does talk in his background section about there being two defects. And you don't defend this part of the district court's statement in your brief? Am I right? That is right. But I think you have to look at it in context and overall. So in background section, Boyle's absolutely does parrot what Stapleford says in terms of here's the defect findings. But when you actually look at the repair procedure and how the damages are calculated, it is a repair procedure for the auxiliary cooler defect to replace it with an external cooler. There is nothing in that repair procedure, there is nothing in that damage calculation that speaks at all to this supposed we've overfilled the coolant. It just doesn't make sense when you look at what it is set forth there because it's drain the fluid first, replace the auxiliary cooler with an external cooler, then refill the fluid. You wouldn't be ever to address the overfill liquid defect be refilling the fluid. So in the abstract, there would be no need in a case with two defects for the damages expert in the abstract to sort out one from the other, right? Well, if you're going to be left with one defect, he obviously didn't know that when he wrote the report, right? In the abstract, if you've got multiple injury-causing events in it and it causes one injury, I could see an expert opining on that one injury. So where you have a damages expert who, at least from the face of the report, is giving the damages for the defects combined, don't you think in an area where the district court is sort of misreading the report and then is letting defect two go forward as to the viability expert, don't you think in those circumstances, either we should send it back for sorting this out as to the fluid defect or alternatively find that the district court abused its discretion in failing to allow Boyle to sort through the two defects as opposed to on the liability expert? Well, I think there's other reasons that the court should not ultimately come to that conclusion. Partly it's plaintiff's own admissions here in their opening brief. So what plaintiffs say in their opening brief here is that Boyle's report really isn't even evidence of damages. So we're sitting here with a summary judgment ruling, and that's what's under review. I think they say that it's a way to calculate class damages, but I don't see why that's foreclosing the possibility that the plaintiff himself for the individual damages could testify as to individual damages. Can you tell me why that wouldn't be a viable way to prove damages individually? Well, we're talking about the summary judgment standard here, and we're talking about the need for competent evidence. So what plaintiffs said was their competent evidence in the district court was they just cited merely to the Boyle's report and said, this is our evidence of damages. And now that that Boyle's report has been rejected by the district court and they're here trying to change their arguments, they affirmatively state twice in their opening. So is there anywhere where you pinned them down and said, identify all your claims of damages and all the sources of the evidence and exactly how much you're claiming? Because I couldn't really find anywhere where the named plaintiff, whose name I don't know if I get to pronounce, was really asked, like, exactly what are the damages you're claiming and is that part of your evidence? Can you point me to somewhere where that was done? Well, certainly in the summary judgment briefing, Your Honor, at that point it's plaintiff's burden to come forth with his proof of damages. We challenge plaintiff in the summary judgment papers. You have no proof of damages, and in response to that, all they cited in the district court was just a very simple cite to the Boyle's report. Plaintiff has been damaged. And they now disavow that twice in their opening brief. And we pointed out in our briefing exactly where. But in addition, I can say it now on page 32, they say the Boyle's report did not bear on whether plaintiff himself had suffered damages. And then again on page 60, plaintiff admits the Boyle's report does not provide that plaintiff was damaged. So we're talking about whether or not the district court committed error in granting summary judgment based ultimately on a finding the plaintiff didn't have evidence of damages. They don't claim in this court that Boyle's provides that evidence. They actually disavow that. What they claim in this court is that plaintiff's self-serving conclusion or assertion that I paid too much is what the evidence should have been that saves them and gets them back to the district court. But they've cited no cases where when a plaintiff is required at the summary judgment stage to come forth with evidence of a damage, that a simple statement that I think I paid too much is enough evidence as opposed to just a conclusion or an allegation. And we've cited cases in our briefing, too, where this court and district courts have said at the summary judgment stage, you have to come forth with evidence in order for your claim to survive, and you need something more than just that bold statement that I paid too much. Well, they're relying as they're entitled to, I think. Tell me if you disagree on the view that we can measure the amount of overpayment by the cost of repair. It's the noon case. That's a viable damages theory. They have admissible evidence from the portion of the Stapleford testimony and report that was permitted to go forward saying that there's this fluid-level defect. And we know how that would be addressed, what would be needed to fix that, right? You'd need to turn it. I don't mean to interrupt. I'm sorry. Is that wrong? I don't think there's evidence on the record about how it was clear that you needed to drain the fluid, fill it back up with new fluid, make sure that it's at the right level, and then so you'd know that there's labor costs in that, and then you have to pay, I guess, $25 for a couple of quarts of new fluid. That's not right. No, Your Honor, and I'm glad you asked that question because it seems perhaps that what I was explaining earlier I may not have done a very good job. So what you see from Stapleford in the email that they sent to plaintiff's counsel, the plaintiff's counsel sent to Boyle, that is a repair procedure for replacing an auxiliary cooler with an external cooler. Step one, drain the fluid. Step two, replace the valve. Step three, and so on and so forth. The last step, refill the coolant that you just took out because you had to take it out in order to work on the system. Nothing in there says check for a possible overfill situation. That is nobody, no, there is no evidence here saying that for a possible overfill situation where, you know, the theory is that you get froth and then it causes lagging. So. What about the internal emails? I thought that's what I'm remembering that your folks were talking about. Yeah, when the fill level is too high, the way you have to address that is that you have to drain out the existing fluid and then replace it with new fluid and make sure that you've got it, I don't know, an inch below whatever that level is and then you'll be okay. Yeah, but I'm not sure that procedure was, it depends on what you find in that vehicle. So if you find an overfill situation without froth, you can just check it and drain it out. I think the document spoke to if there was froth, then you needed to replace the fluid. But certainly that is not evidence of damage. In terms of. Constantly, right? Doing the work to figure out which you are and fix it, you're going to have to pay a repair person. But there's no evidence of what that is here. Well, I mean, isn't the last line, well, maybe second to last line on the chart on ER 533 about that? That is in a situation where you've drained the fluid and you've replaced all these parts. I don't think the intent was to assign that as damages for this. Yeah, I mean, I hear what you're saying. Obviously when Boyles drafted this, he had in mind that there were two defects that were going to be addressed in one procedure. But you're standing here, I guess, this is what I understand, you're standing here telling us we do know, I think, that something would need to be done to address the fill level. And it seems like we can piece together that that involves taking out the existing fluid and filling it back up at the right level. That is not going to be for free, right? And so he was giving us some indication, I think, that add transmission fluid, bleed and check level, it takes a half hour of labor. Okay? Then he has a statement that says, you know, two quarts of automatic transmission fluid will cost you $24 or $50. I don't know what else you want, a half hour of labor, and that costs for the fluid. That's damages, right? That's some estimate of what the cost of repair is. But that was not damages and evidence that was presented in opposition to the summary judgment here. You know, that's us piecing back through and accepting plaintiff's arguments. Well, you're standing here saying that they have no evidence whatsoever of damages. It's totally speculative that it would cost a penny to address this. And it seems to me, and you can use your common sense to understand this, just realize that it's going to cost something to fix this. And if you wanted some dollar figure attached to that, we at least have something from the Boyle's report. And I don't even know that you need that because everyone knows it's not free. Your Honor, I would like to address this notion of the fluid level defect in another way as well because the court can affirm summary judgment here on any basis. So plaintiff states in his reply brief that the fluid level defect is what causes slippage and failure to accelerate. So the evidence here was not that that fluid level caused the overfeeding. That was the auxiliary cooler defect, as opined by State before. So it's that alleged defect that is supposedly related to the fluid level defect, which is the slippage. So in our brief, we pointed out that plaintiff testified affirmatively that with respect to lag, lack of acceleration, those types of things, he affirmatively admitted that he knew about that since the day one that he bought his vehicle. So we made a statute of limitations argument as to that slippage, lag, lack of acceleration. In plaintiff's reply brief, they do not argue at all that they have any tolling, any discovery rule, nothing with respect to that lag or slippage. The only thing they argue is that the discovery rule should be tolled on their overheating defect because he had the repair in 2014, then had to come back in 2018. But with respect to his allegations that this defect has caused lag, slippage, lack of acceleration, he knew about that since 2012, and he didn't file suit until more than six years later. I thought the main problem was the overheating, though, and that is caused by the fact that the fluid is set too high, right? But that's not what they say. That's not what they say in their reply brief, Your Honor, on page 30. They say that the fluid level defect causes slippage or failure to accelerate. That's on page 30 of their reply brief. They don't try to relate that to overheating. So there's been a lot of gymnastics here trying to fit things in because I think everyone's acknowledged there were mistakes made here, and there's been a lot of gymnastics in our opposition brief. And the point I've been trying to make here is no matter what, it doesn't all work because what happened here is they had an alleged defect. The expert was wrong. The court struck that portion of the expert. I think the intent was that they had a damage related to that overheat expert. They've now tried to, I think, shoehorn in that damage with respect to the fluid level defect. But if we are going to talk about going forward on that fluid level defect claim, I think the statute of limitations argument is a solid winner because they don't even say nothing in their reply brief about any discovery rule or polling with respect to the fluid level defect. All right. Thank you very much. I appreciate your argument. We've got plenty of time for a vote. Thank you, Your Honors. I don't have too much. So if there are more questions, I'm happy to take whatever you all have.  in your opposing counsel's argument? Yes. So I think there are two points. First, the statute of limitations, we did argue it was told. And it was told because it wasn't until the second time he went to get his vehicle repaired that he was told by the manufacturer that everything that was being worked on was a closed system. And therefore, he knew that he couldn't get it repaired just by going to the manufacturer. And that's when the statute of limitations polling period started. And does that relate to the slippage, the liquid defect that's remaining here, if we assume that the other defect is off the table? It does, Your Honor. And the liquid defect also is related to the overheating defect, as was discussed, or causes the overheating. Obviously, you just heard your opponent say that you admit on page 30, I think, in your reply brief that the exact opposite is true. What are you pointing to us in opposition to that? He's saying that the fluid level, I call it the fluid level, the defect, is not, you are not alleging that that's related to the overheating problem. It's related to these other problems that your client knew about from way back when. It may not have been. When I was going through and enumerating all the problems in the brief, it may not have been included in our appellate brief. But it is part of the allegations in the complaint and part of the analysis that was done by the expert. And so I don't know without completely reviewing the brief right now in front of me if I could point you to a specific citation. And I apologize for that. I did want to say, so it is not completely wrong that we didn't mention the plaintiff's individual testimony as a component of damages in our opposition to the summary judgment briefing below the trial board. So I did go through and find that site. And that's the second volume of the excerpts of record, page 244, where we mentioned that his testimony goes to damages. And that was in response to summary judgment? Yes, yes. It's our opposition briefing to the summary judgment motion. It didn't seem like it was a big point to the court, but there is that specific citation regarding what opposing counsel mentioned. I also wanted to talk a little bit about the reason why the plaintiff's vehicle usually isn't the one that gets tested by the expert. So often testing these vehicles involves dismantling the vehicle or destroying the vehicle. And so there's a spoliation issue. And so often, for that reason in addition, plaintiff's counsel in general doesn't like this vehicle. It just doesn't help you here because, as I understand it, if you just lift the hood, the expert would have been able to see, oh, yeah, actually this car has the external cooler already there. It's not going to have to take apart anything to figure that out, right? And then there was one other thing that I wanted to talk about. I'm sorry. So I did pull up page 30 of your reply brief, which I think is what your opposing counsel pointed to. And I see what he's saying. It says plaintiff, okay, so you say there's the fluid level defect. Sorry, I've been calling it liquid, but it is fluid level defect. And the other is the overheating defect. And it says plaintiff's vehicle exhibits these defects. Slippage of the clutches and a failure to accelerate are symptoms of the fluid level defect. Plaintiff's vehicle has always exhibited a lack of acceleration. And then plaintiff described the lack of acceleration on freeways. If it's always exhibited that, your answer is it wasn't until you were told that it was a closed system. And it was unrepairable that the tolling started. And so this court in the Daniels decision basically went with the California Mejia line of cases saying that that is how tolling is calculated in automotive defect cases. That's not true for the UCL claim, though, right? There's no delayed discovery or anything tolling for the UCL claim? I thought there was. Maybe I'm wrong. Maybe it's just the consumer defect cases. A concluding point here. Oh, really quick. One other thing is that an additional component of the damages, in addition to the fluid, changing the fluid and diagnosing the fluid by a mechanic, as they've already mentioned, is that the manufacturer's specifications for what the fluid is supposed to be needs to change. That's another part of the damages we're alleging, and I forgot to mention earlier. Okay. Thank you. Very good. Thank you very much for your argument. The case just argued is submitted.
judges: WATFORD, FRIEDLAND, BENNETT